**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **SHANE FOWLER, individually and on behalf of other similarly situated employees,** <br><br> **v.** <br><br> **PER SE GROUP, INC.** | **Case No.** <br><br><br> **Jury Trial Demanded** <br><br> **Class and Collective Action** |

## COMPLAINT

### SUMMARY

1. Per Se Group, Inc. (PSG) failed to pay Shane Fowler (Fowler) and other workers like him, overtime as required by the Fair Labor Standards Act (FLSA) and the Connecticut Minimum Wage Act, Conn. Gen. Stat. Sections 31-58, *et seq.* (CMWA).

2. Instead, PSG paid Fowler and other workers like him, the same hourly rate for all hours worked, including those in excess of 40 in a workweek (or, "straight time for overtime").

3. Fowler brings this lawsuit to recover unpaid overtime wages and other damages owed under the FLSA.

### JURISDICTION AND VENUE

4. This Court has original jurisdiction under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331(a) because this Action involves a federal question under the FLSA.

5. The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d).

6. The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because PSG is headquartered in Wheaton, Illinois, in this District and Division.

### THE PARTIES

8.    During the relevant period, Fowler was an hourly employee of PSG. Throughout his employment with PSG, Fowler was paid the same hourly rate for all hours worked (including those hours in excess of 40 hours in a single workweek) with no overtime compensation.

9.    Fowler's written consent is attached herein as Exhibit A.

10.    Fowler brings this Action on behalf of himself and other similarly situated workers who were paid by PSG's "straight time for overtime" system.

11.    The class of similarly situated employees sought to be certified as a collective action under the FLSA is defined as:

**All employees of Per Se Group, Inc. during the past 3 years who were paid straight time for overtime.**

12.    Fowler seeks conditional and final certification of this Putative Class in this collective action under 29 U.S.C. § 216(b).

13.    Fowler also represents similarly situated employees of a class defined as:

**All employees of Per Se Group, Inc. during the past 3 years who were paid straight time for overtime in Connecticut (the "Connecticut Class").**

14.    The members of the class and collective action shall be referred to as the Putative Class Members.

15.    PSG is an Illinois Corporation conducting business nationwide and may be served with process by serving its registered agent, Illinois Corporation Service at 801 Adlai Stevenson Dr., Springfield, Illinois 62703.

## COVERAGE UNDER THE FLSA

16.     At all relative times, PSG was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

17.     At all relative times, PSG was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

18.     At all relative times, PSG was and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cell phones, computers, walkie-talkies, hardhats, and personal protective equipment – that have been moved in or produced for commerce.

19.     At all relative times, PSG has had and has an annual gross volume of sales made in excess of $1,000,000.

20.     At all times hereinafter mentioned, Fowler and the Putative Class Members were engaged in commerce or in the production of goods for commerce per 29 U.S.C. § 206-207.

## THE FACTS

21.     PSG provides staffing, consulting, and payroll services for companies in the power, oil and gas, construction, and manufacturing industries.

22.     In order to provide services to its clients, PSG hires employees it pays on an hourly basis.

23.     Fowler worked as a Superintendent for PSG from October 2017 until June 2018.

24.     Fowler worked for PSG in Connecticut.

25.     Fowler was staffed by PSG to NRG.

26. While working for PSG, Fowler was paid the same hourly rate for all hours worked (including those hours in excess of 40 hours in a single workweek) with no overtime compensation.

27. Fowler assisted with the management of plant operations.

28. Fowler reported his hours to PSG.

29. Fowler received a paycheck from PSG.

30. Fowler was paid $45 an hour for every approved hour worked.

31. Fowler and the Putative Class Members were hourly employees of PSG.

32. Fowler and the Putative Class Members were not paid a guaranteed salary.

33. If Fowler and the Putative Class Members worked under 40 hours, They were only paid for the hours they worked.

34. But Fowler and the Putative Class Members would work more than 40 hours in a week.

35. For example, Fowler routinely worked 48 or more hours a week.

36. The hours Fowler and the Putative Class Members worked are reflected in PSG's payroll records.

37. PSG paid Fowler and the Putative Class Members the same hourly rate for all hours worked, including those hours in excess of 40 hours in a single workweek.

38. PSG did not pay Fowler and the Putative Class Members overtime for all hours worked in excess of 40 hours in a single workweek.

39. Rather than receiving time and a half as required by the FLSA, Fowler and the Putative Class Members only received "straight time" pay for overtime hours worked.

40. This "straight time for overtime" payment scheme violates the FLSA.

41. PSG was aware of the overtime requirements of the FLSA.

42. PSG nonetheless failed to pay certain hourly employees, such as Fowler, overtime.

4

43.     Fowler and the Putative Class Members are subjected to similar compensation practices.

44.     Fowler and the Putative Class Members also worked similar hours and were denied overtime because of the same illegal pay practice.

45.     PSG did not pay Fowler and the Putative Class Members on a salary basis.

46.     PSG paid Fowler and the Putative Class Members "straight time for overtime."

47.     PSG failed to pay Fowler and the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

48.     PSG knew, or acted with reckless disregard for whether, Fowler and the Putative Class Members were paid on a salary basis.

49.     PSG's failure to pay overtime to these hourly workers was, and is, a willful violation of the FLSA.

## FLSA COLLECTIVE ACTION ALLEGATIONS

50.     PSG's illegal "straight time for overtime" policy extends beyond Fowler.

51.     It is the "straight time for overtime" payment plan that is the compensation practice that Fowler alleges to violate the FLSA.

52.     PSG paid numerous workers using the same unlawful scheme.

53.     Any differences in job duties do not detract from the fact Fowler and the FLSA Class were entitled to overtime pay.

54.     The workers impacted by PSG's "straight time for overtime" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CMWA VIOLATIONS

55.     Fowler also brings this claim under the CMWA as a Rule 23 class action.

56.     The conduct alleged violates the CMWA (Conn. Gen. Stat. Sections 31-58, et seq).

5

57. At all relevant times, PSG was subject to the requirements of the CMWA.

58. At all relevant times, PSG employed Fowler and each Class Member with Connecticut state law claims as an "employee" within the meaning of the CMWA.

59. The CMWA requires employers like PSG to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. Fowler and each member of the Connecticut Class are entitled to overtime pay under the CMWA.

60. PSG had a policy and practice paying Fowler and each member of the Connecticut Class straight time for overtime and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

61. Fowler and each member of the Connecticut Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

62. Fowler and each member of the Connecticut Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by PSG, as provided by the CMWA

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

63. The illegal pay practices PSG imposed on Fowler were imposed on the Putative Class Members.

64. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

65. Numerous other individuals who worked with Fowler were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by federal wage laws.

66.     Based on his experiences and tenure with PSG, Fowler is aware that PSG's illegal practices were imposed on the Putative Class Members.

67.     The Putative Class Members were not paid overtime when they worked more than 40 hours per week.

68.     The Putative Class Members were not paid a guaranteed salary.

69.     PSG's failure to pay overtime at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

70.     Fowler's experiences are therefore typical of the experiences of the Putative Class Members.

71.     The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent class or collective treatment.

72.     Fowler has no interests contrary to, or in conflict with, the Putative Class Members.

73.     Like each Putative Class Member, Fowler has an interest in obtaining the unpaid overtime wages owed under federal law.

74.     The precise size and the identity of other Putative Class Members is ascertainable from the business records, tax records, and/or employee or personnel records maintained by PSG.

75.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

76.     Absent a class and collective action, many Putative Class Members will not obtain redress of their injuries and PSG will reap the unjust benefits of violating the FLSA.

77.     Furthermore, even if some Putative Class Members could afford individual litigation against PSG, it would be unduly burdensome to the judicial system.

78.     If individual actions were required to be brought by each Putative Class Member, it would necessarily result in a multiplicity of lawsuits and would create hardship to Putative Class Members, to PSG, and to the Court.

79.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members and provide for judicial consistency.

80.     The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

> a.   Whether PSG employed members of the Classes within the meaning of the applicable state and federal statutes, including the FLSA and CMWA;
>
> b.   Whether PSG required Fowler and the Putative Class Members to work more than 40 hours during individual work weeks;
>
> c.   Whether PSG's decision to pay Fowler and the Putative Class Members straight time for overtime was made in good faith;
>
> d.   Whether PSG paid Fowler and the Putative Class Members on a salary basis;
>
> e.   Whether PSG failed to pay Fowler and the Putative Class Members at a rate of one and one-half times their regular rate of pay when they worked more than 40 hours in a single workweek;
>
> f.   Whether PSG's violation of the FLSA and CMWA was willful; and
>
> g.   Whether PSG's illegal pay practices were applied uniformly across the nation to Fowler and the Putative Class Members.

81.     Fowler and the Putative Class Members sustained damages arising out of PSG's illegal and uniform employment policy.

82.     Fowler knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

83.     Fowler will fairly and adequately represent and protect the interests of the Putative Class Members.

84.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

85.     By failing to pay Fowler and the Putative Class Members overtime at one-and-one-half times their regular rates, PSG violated the FLSA and CMWA's overtime provisions.

86.     PSG owes Fowler and the Putative Class Members overtime pay at the proper overtime rate.

87.     Because PSG knew, or showed reckless disregard for whether, its pay practices violated the FLSA and CMWA, PSG owes these wages for at least the past three years.

88.     PSG is liable to Fowler and the Putative Class Members for an amount equal to all unpaid overtime wages as liquidated damages.

89.     Fowler and the Putative Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

90.     Fowler demands a Jury trial.

## PRAYER

91.     Fowler prays for relief as follows:

   a.  An order allowing this action to proceed as a collective action under the FLSA and directing notice to the FLSA Class Members;

      b.   A judgment finding PSG liable to Fowler and the Putative Class Members for unpaid overtime and an equal amount as liquidated damages;

      c.   For an order designating the state law class as a class action pursuant to Fed. R. Civ. P. 23;

      d.   For an Order appointing Fowler and his counsel and Class Counsel to represent the interests of both the federal and state law classes;

      e.   An order awarding attorneys' fees, costs, expenses, and judgment interest; and

      f.   An award of such other and further relief as may be necessary and appropriate.

Respectfully submitted,

Date:  April 17, 2020                     s/Douglas M. Werman
                                    One of Plaintiff's Attorneys

Douglas M. Werman
dwerman@flsalaw.com
Maureen A. Salas
msalas@flsalaw.com
Sarah J. Arendt
sarendt@flsalaw.com
**WERMAN SALAS P.C.**
77 W. Washington Street, Suite 1402
Chicago, IL 60602
(312) 419-1008 – Telephone
(312) 419-1025 – Facsimile

      **AND**

Michael A. Josephson
Texas State Bar No. 24014780
mjosephson@mybackwages.com
Richard M. Schreiber
Texas State Bar No. 24056278
rschreiber@mybackwages.com
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile

      **AND**

Richard J. (Rex) Burch
Texas State Bar No. 24001807
rburch@brucknerburch.com
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile

**ATTORNEYS IN CHARGE FOR PLAINTIFF**